UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
TIMOTHY B. GREENFIELD,

      Plaintiff,

   v.                               08-cv-07334 (JSR)

THE EASTMOND CORPORATION,         DEFENDANTS' ANSWER
A.L. EASTMOND & SONS, INC.,     & COUNTERCLAIMS
EASCO BOILER CORP. and
ARLINGTON LEON EASTMOND, JR.,
Individually,                    ELECTRONICALLY
                                 FILED

      Defendants.
---------------------------------x

      Defendants EASTMOND & SONS BOILER REPAIR & WELDING
SERVICES INC., improperly pleaded as "THE EASTMOND CORPORATION,"
A.L. EASTMOND & SONS INC., EASCO BOILER CORP. and ARLINGTON LEON
EASTMOND, JR. ("Leon Eastmond"), (collectively "Defendants"),
for their Answer to the Complaint, hereby respond as follows:

### THE PARTIES

      1.  Defendants admit the allegations contained in
paragraph 1.

      2.  Defendants deny the allegations contained in
paragraph 2, and state that Eastmond & Sons Boiler Repair &
Welding Services Inc. is incorporated and conducts business in
the State of New York.

      3.  Defendants deny the allegations contained in
paragraph 3, except to admit that Eastmond & Sons Boiler Repair

& Welding Services Inc. is incorporated in and conducts business in the State of New York.

4.    Defendants deny the allegations contained in paragraph 4, and state that A.L. Eastmond & Sons Inc. is incorporated in and conducts business in the State of New York.

5.    Defendants deny the allegations contained in paragraph 5, except to admit that A.L. Eastmond & Sons Inc. is incorporated in the State of New York and has a principal place of business at 1175 Leggett Avenue, Bronx, New York 10474.

6.    Defendants deny the allegations contained in paragraph 6, except to admit that Eastmond & Sons Boiler Repair & Welding Services Inc. is a subsidiary of A.L. Eastmond & Sons Inc.

7.    Defendants deny the allegations contained in paragraph 7, and state that A.L. Eastmond & Sons Inc. manufactures, sells, and services boilers.

8.    Defendants deny the allegations contained in paragraph 8, except to admit that A.L. Eastmond & Sons Inc.'s assets include real estate holdings.

9.    As pleaded, paragraph 9 is incomplete and unintelligible and defendants are unable to answer it.

2

10.   Defendants deny the allegations contained in paragraph 10, and state that Easco Boiler Corp. is incorporated in and conducts business in the State of New York.

11.   Defendants deny the allegations contained in paragraph 11, except to admit that Easco Boiler Corp. is incorporated in the State of New York and has a principal place of business at 1175 Leggett Avenue, Bronx, New York 10474.

12.   Defendants deny the allegations contained in paragraph 12, and state that Easco Boiler Corp. is an affiliate of A.L. Eastmond & Sons Inc.

13.   Defendants deny the allegations contained in paragraph 13, and state that Easco Boiler Corp. manufactures, sells and services boilers.

14.   Defendants deny the allegations contained in paragraph 14, except to admit that A.L. Eastmond & Sons Inc.'s assets include real estate holdings.

15.   Defendants deny the allegations contained in paragraph 15.

16.   Defendants deny the allegations contained in paragraph 16, and state that Leon Eastmond is the President and

3

Chief Executive Officer of Eastmond & Sons Boiler Repair & Welding Services Inc.

17.   Defendants deny the allegations contained in paragraph 17, except to admit that Leon Eastmond is the President and Chief Executive Officer of A.L. Eastmond & Sons Inc.

18.   Defendants deny the allegations contained in paragraph 18, except to admit that Leon Eastmond is the President and Chief Executive Officer of Easco Boiler Corp.

19.   Defendants admit the allegations contained in paragraph 19.

20.   Defendants admit the allegations contained in paragraph 20.

21.   Defendants admit the allegations contained in paragraph 21.

## FACTUAL ALLEGATIONS

22.   Defendants deny the allegations contained in paragraph 22, and state that A.L. Eastmond & Sons Inc. began as a blacksmith shop.

4

23.  Defendants admit the allegations contained in paragraph 23.

24.  Defendants admit the allegations contained in paragraph 24.

25.  Defendants deny the allegations contained in paragraph 25, except to admit that A.L. Eastmond & Sons Inc. reported a revenue loss in 2005.

26.  Defendants deny the allegations contained in paragraph 26.

27.  Defendants deny the allegations contained in paragraph 27.

28.  Defendants deny the allegations contained in paragraph 28.

29.  Defendants deny the allegations contained in paragraph 29.

30.  Defendants deny the allegations contained in paragraph 30.

31.  Defendants deny the allegations contained in paragraph 31.

32. Defendants deny the allegations contained in paragraph 32.

33. Defendants deny the allegations contained in paragraph 33.

34. Defendants deny the allegations contained in paragraph 34.

35. Defendants deny the allegations contained in paragraph 35, and state that plaintiff and Leon Eastmond discussed hiring plaintiff to assist Eastmond & Sons Boiler Repair & Welding Services Inc., A.L. Eastmond & Sons Inc., and Easco Boiler Corp. in securing financing. Defendants further state that plaintiff and Leon Eastmond discussed the possibility of plaintiff earning equity in A.L. Eastmond & Sons, but defendants deny that an agreement was reached on this or any other term.

36. Defendants deny the allegations contained in paragraph 36, and state that plaintiff and Leon Eastmond discussed hiring plaintiff to assist Eastmond & Sons Boiler Repair & Welding Services Inc., A.L. Eastmond & Sons Inc., and Easco Boiler Corp. in securing financing.

6

37.  Defendants deny the allegations contained in paragraph 37, and state that plaintiff's proposed services included new business development and securing financing.

38.  Defendants deny the allegations contained in paragraph 38, and state that plaintiff's proposed services included new business development and securing financing.

39.  Defendants deny the allegations contained in paragraph 39.

40.  Defendants deny the allegations contained in paragraph 40.

41.  Defendants deny the allegations contained in paragraph 41.

42.  Defendants deny the allegations contained in paragraph 42, and state that plaintiff and Leon Eastmond discussed hiring plaintiff to assist Eastmond & Sons Boiler Repair & Welding Services Inc., A.L. Eastmond & Sons Inc., and Easco Boiler Corp. in securing financing, but defendants deny that any agreement as to remuneration was reached.

43.  Defendants deny the allegations contained in paragraph 43, and state that plaintiff and Leon Eastmond discussed plaintiff providing consulting services that would

7

assist Eastmond & Sons Boiler Repair & Welding Services Inc., A.L. Eastmond & Sons Inc., and Easco Boiler Corp. in securing financing, but defendants deny that any agreement as to remuneration was reached.

44.    Defendants deny the allegations contained in paragraph 44, and state that plaintiff was provided an office at 1200 Oak Point Avenue in the Bronx and company email address in June 2007, but no agreement had been reached regarding the terms and conditions of his retention.

45.    Defendants deny the allegations contained in paragraph 45, and state that no employment agreement had been reached regarding the terms and conditions of his retention, but plaintiff agreed to provide services to defendants without remuneration until certain financing had been obtained by defendants.

46.    Defendants deny the allegations contained in paragraph 46.

47.    Defendants deny the allegations contained in paragraph 47, and state that in June 2007, plaintiff maintained an office at 1200 Oak Point Avenue in the Bronx and periodically came to the office until January 2008, when he packed his

personal belongings and terminated his relationship with
defendants.

48.    Defendants deny the allegations contained in
paragraph 48, except to admit that plaintiff was involved in
defendants' negotiations of a loan agreement with Sovereign
Bank.    Defendants state that plaintiff unnecessarily delayed the
negotiation of the loan agreement by inserting his name into the
agreement as having ownership interest in Eastmond & Sons Boiler
Repair & Welding Services Inc., A.L. Eastmond & Sons Inc., and
Easco Boiler Corp., and presenting terms to Sovereign Bank
without first receiving authorization from Leon Eastmond.
Additionally, plaintiff had a working relationship with the
representative at Sovereign Bank prior to his arrival at
defendants' offices, and failed to explain or justify why he did
not introduce defendants to this representative in June 2007.

49.    Defendants deny the allegations contained in
paragraph 49.

50.    Defendants deny the allegations contained in
paragraph 50.

51.    Defendants deny the allegations contained in
paragraph 51, except to admit that in August 2007, plaintiff
loaned defendants $100,000.    Defendants further state that in

December 2007, they re-paid plaintiff his $100,000 in full with interest.

52.   Defendants deny the allegations contained in paragraph 52, and state that plaintiff provided defendants only with the name of a risk management firm, and defendants then negotiated and secured various new insurance agreements with that firm that resulted in cost savings.

53.   Defendants deny the allegations contained in paragraph 53.

54.   Defendants deny the allegations contained in paragraph 54.

55.   Defendants deny the allegations contained in paragraph 55.

56.   Defendants deny the allegations contained in paragraph 56.

57.   Defendants deny the allegations contained in paragraph 57.

58.   Defendants deny the allegations contained in paragraph 58.

59.    Defendants deny the allegations contained in paragraph 59.

60.    Defendants deny the allegations contained in paragraph 60.

61.    Defendants deny the allegations contained in paragraph 61.

62.    Defendants deny the allegations contained in paragraph 62.

63.    Paragraph 63 calls for a legal conclusion to which no response is required.  Defendants state, however, that they attempted to reach an agreement with plaintiff regarding the terms and conditions of his retention, but he refused to draft an agreement and the negotiations stalled without a meeting of the minds.

64.    Defendants deny the allegations contained in paragraph 64.

65.    Defendants deny the allegations contained in paragraph 65, and further state that there was no employment agreement between plaintiff and defendants.

66.    Defendants deny the allegations contained in paragraph 66.

11

67. Defendants deny the allegations contained in paragraph 67, and state tat plaintiff packed up his personal belongings and acknowledged that he wanted to leave. Defendants attempted to come to an agreement regarding plaintiff's remuneration, but plaintiff refused to negotiate.

68. Defendants deny the allegations contained in paragraph 68, and state tat plaintiff packed up his personal belongings and acknowledged that he wanted to leave. Defendants attempted to come to an agreement regarding plaintiff's remuneration, but plaintiff refused to negotiate.

69. Defendants deny the allegations contained in paragraph 69, and state that there never was an employment agreement between plaintiff and defendants.

70. Defendants deny the allegations contained in paragraph 70.

71. Defendants deny the allegations contained in paragraph 71.

72. Defendants deny the allegations contained in paragraph 72.

73. Paragraph 73 calls for a legal conclusion to which no response is required. Defendants state, however, that

plaintiff did not provide the services that he proposed to Leon Eastmond. Plaintiff's acts and omissions cost defendants hundreds of thousands of dollars.

74. Defendants are without knowledge or information sufficient to form a reasonable belief as to the truth of the allegations contained in paragraph 74, but state that defendants attempted to negotiate the terms and conditions of plaintiff's retention, including what he would be paid for his services, but plaintiff refused to negotiate in good faith.

75. Defendants are without knowledge or information sufficient to form a reasonable belief as to the truth of the allegations contained in paragraph 75, but state that defendants attempted to negotiate the terms and conditions of plaintiff's retention, including what he would be paid for his services, but plaintiff refused to negotiate in good faith.

76. Defendants deny the allegations contained in paragraph 76.

77. Defendants deny the allegations contained in paragraph 77, except to admit that in January 2008, plaintiff unreasonably demanded that defendants pay him $2 million dollars for his alleged services.

78.    Defendants deny the allegations contained in paragraph 78, and state that in January 2008, defendants offered plaintiff $100,000 for his alleged services.  Defendants further state that plaintiff refused to accept anything less than $2 million, and refused to negotiate in good faith.

## FIRST CLAIM FOR RELIEF- BREACH OF CONTRACT

79.    Defendants repeat their responses to the allegations contained in paragraphs 1 through [85 *sic*] 78 as if set forth fully herein.

80.    Defendants deny the allegations contained in paragraph 80.

81.    Defendants deny the allegations contained in paragraph 81, and they further deny that plaintiff is entitled to the relief requested in the First Claim.

## SECOND CLAIM FOR RELIEF- FRAUD

82.    Defendants repeat their responses to paragraphs 1 through [89 *sic*] 81 as if set forth fully herein.

83.    Defendants deny the allegations contained in paragraph 83.

84.   Defendants deny the allegations contained in paragraph 84.

85.   Defendants deny the allegations contained in paragraph 85, and they further deny that plaintiff is entitled to the relief requested in the Second Claim.

## THIRD CLAIM FOR RELIEF- WRONGFUL DISCHARGE

86.   Defendants repeat their responses to paragraphs 1 through [93 *sic*] 85 as if set forth fully herein.

87.   Defendants deny the allegations contained in paragraph 87.

88.   Defendants deny the allegations contained in paragraph 88, and they further deny that plaintiff is entitled to any of the relief requested in the Third Claim.

## FOURTH CLAIM FOR RELIEF- UNJUST ENRICHMENT

89.   Defendants repeat their responses to paragraphs 1 through [96 *sic*] 88 as if set forth fully herein.

90.   Defendants deny the allegations contained in paragraph 90.

15

91.  Defendants deny the allegations contained in paragraph 91, and they further deny that plaintiff is entitled to any of the relief requested in the Fourth Claim.

**FIFTH CLAIM FOR RELIEF- INTENTIONAL INFLICTION OF EMOTIONAL HARM**

92.  Defendants repeat their responses to paragraphs 1 through [99 *sic*] 91 as if set forth fully herein.

93.  Defendants deny the allegations contained in paragraph 93.

94.  Defendants deny the allegations contained in paragraph 94, and they further deny that plaintiff is entitled to any of the relief requested in the Fifth Claim.

**SIXTH CLAIM FOR RELIEF- PUNITIVE DAMAGES**

95.  Defendants repeat their responses to paragraphs 1 through [102 sic] 94 as if set forth fully herein.

96.  Defendants deny the allegations contained in paragraph 96.

97.  Defendants deny the allegations contained in paragraph 97, and they further deny that plaintiff is entitled to any of the relief requested in the Sixth Claim.

16

## SEVENTH CLAIM FOR RELIEF- REIMBURSEMENT OF COUNSEL FEES

98.    Defendants repeat their responses to paragraphs 1 through [105 *sic*] 97 as if set forth fully herein.

99.    Defendants deny the allegations contained in paragraph 99.

100. Defendants deny the allegations contained in paragraph 100, and they further deny that plaintiff is entitled to any of the relief requested in the Seventh Claim.

As to the prayer for relief immediately following paragraph 100, defendants deny that plaintiff is entitled to any of the relief requested therein, or to any other relief at law, in equity, or otherwise.

## AFFIRMATIVE DEFENSES

As and for their Affirmative Defenses, defendants state as follows:

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's contract claims are barred by the statute of frauds.

### THIRD AFFIRMATIVE DEFENSE

Some or all of plaintiff's claims are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Some or all of plaintiff's claims are barred by the doctrine of equitable estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff has failed to plead the alleged fraud with sufficient particularity.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff was not an employee of any of the defendants and, as such, there was no employment relationship.

18

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff possessed no contract of employment with defendant, whether express or implied.

### EIGHTH AFFIRMATIVE DEFENSE

There is no individual liability for some or all of plaintiff's claims.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff voluntarily left the offices of defendants and was not constructively discharged.

### TENTH AFFIRMATIVE DEFENSE

The conduct alleged by plaintiff, even if true, does not rise to the level necessary to state a claim for constructive discharge.

### ELEVENTH AFFIRMATIVE DEFENSE

The conduct alleged by plaintiff, even if true, does not rise to the level necessary to state a claim for intentional infliction of emotional distress.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff failed to make reasonable efforts to mitigate his damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to an award of punitive damages on some or all of his claims.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to an award of attorneys' fees on his claims.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to injunctive relief on his claims.

WHEREFORE, defendants EASTMOND & SONS BOILER REPAIR & WELDING SERVICES INC., A.L. EASTMOND & SONS, INC., EASCO BOILER CORP. and ARLINGTON LEON EASTMOND, JR., respectfully submit that the Complaint is without merit, and that it should be dismissed, with such further relief as the Court deems just and proper.

20

## COUNTERCLAIM

Defendants/counterclaimants Eastmond & Sons Boiler Repair & Welding Services Inc., A.L. Eastmond & Sons Inc., Easco Boiler Corp. (collectively "The Eastmond Group"), having their principal place of business at 1175 Leggett Avenue, Bronx, New York 10474, by way of Counterclaim against plaintiff Timothy B. Greenfield, say:

.

1. This court has jurisdiction of the counterclaims pursuant to 28 U.S.C. §1332(a).

2. In or about April 2007, plaintiff Greenfield represented to Leon Eastmond that he was being bought out of a partnership with JDC Lighting.

3. Plaintiff Greenfield and Leon Eastmond discussed plaintiff providing services to The Eastmond Group upon dissolution of his partnership with JDC Lighting.

4. Prior to plaintiff Greenfield's arrival at The Eastmond Group, defendants/counterclaimants were negotiating a forbearance agreement with Citibank.

5. Plaintiff Greenfield proposed to Leon Eastmond that he would secure new financing for The Eastmond Group.

6. Plaintiff Greenfield proposed to Leon Eastmond that he would assist in expanding The Eastmond Group's business.

7.   In or about June 2007, Plaintiff Greenfield was provided with an office at 1200 Oak Point Avenue in the Bronx and a corporate email address with The Eastmond Group.

8.   Upon information and belief, plaintiff Greenfield held himself out as the Chief Operating Officer of The Eastmond Group when contacting financial institutions and business development contacts.

9.   Plaintiff Greenfield was not a Chief Operating Officer of any defendant/counterclaimant, and was not authorized to use this title.

10.   Between June 2007 and January 2008, Plaintiff Greenfield had access to confidential and proprietary information and trade secrets of The Eastmond Group.

11.   Between June 2007 and January 2008, plaintiff Greenfield was involved in the creation of a succession plan for The Eastmond Group.

12.   Plaintiff Greenfield added his own name to drafts of The Eastmond Group's succession plan, discretely and without authorization, such that he would acquire an equity interest in The Eastmond Group in the event that Leon Eastmond was no longer able to serve as President and Chief Executive Officer of The Eastmond Group.

13.  Upon information and belief, plaintiff Greenfield intentionally and discretely added himself to the succession plan in order to position himself to acquire The Eastmond Group.

14.  Neither Leon Eastmond nor Tyren Eastmond authorized plaintiff to add his name to the succession plan.

15.  Plaintiff Greenfield was involved in drafting some of the terms of the loan documents with Sovereign Bank.

16.  Plaintiff Greenfield added his own name as an owner in drafts of The Eastmond Group's Sovereign Bank loan documents.

17.  Plaintiff Greenfield was not authorized to add his name to the loan documents.

18.  Between June 2007 and January 2008, plaintiff Greenfield was involved in discussions concerning different types of financing available to The Eastmond Group.

19.  Plaintiff Greenfield repeatedly recommended that The Eastmond Group pursue an asset-based financing as opposed to conventional commercial loans typically issued by financial institutions to businesses.

20.  Upon information and belief, plaintiff Greenfield recommended asset-based financing in an effort to facilitate the collapse of The Eastmond Group.

21. A broker at Fromm Financial introduced defendants/counterclaimants to a representative at Sovereign Bank to secure financing.

22. Prior to his arrival at The Eastmond Group, plaintiff Greenfield secured financing for his own company, JDC Lighting, through the same representative at Sovereign Bank referenced in paragraph 21 of the counterclaim.

23. Plaintiff Greenfield did not disclose to defendants/counterclaimants his relationship with the representative at Sovereign Bank.

24. Plaintiff Greenfield failed to explain or justify why he did not introduce defendants/counterclaimants to this representative when he arrived at The Eastmond Group in June 2007, or at any time thereafter.

25. Plaintiff Greenfield delayed negotiations of the loan with Sovereign Bank by adding his name to loan documents as an owner of The Eastmond Group and proposing terms to Sovereign Bank without Leon Eastmond's prior authorization.

26. Plaintiff Greenfield's actions and omissions with respect to the Sovereign Bank loan caused The Eastmond Group to pay hundreds of thousands of dollars in loan interest and back taxes on its existing Citibank loan.

27. In October 2007, Leon Eastmond and Tyren Eastmond, Vice President of Easco Boiler Corp., assumed

24

responsibility for negotiating the $8 million contract for financing with Sovereign Bank.

28. Plaintiff Greenfield provided defendants/counterclaimants only with the name of a risk management firm in Chicago.

29. Defendants/counterclaimants negotiated and secured various new insurance agreements with the Chicago-based risk management firm that resulted in cost savings.

30. Plaintiff Greenfield did not negotiate the terms of the new insurance agreements.

31. Upon information and belief, plaintiff Greenfield forwarded from his Eastmond Group email account confidential and proprietary information and trade secrets to his personal email address and third parties without notice or authorization.

32. Upon information and belief, plaintiff Greenfield also forwarded confidential and proprietary information and trade secrets from his personal email address to third parties without notice or authorization.

33. Upon information and belief, plaintiff Greenfield remained involved in the business of JDC Lighting and other businesses while he purported to be providing services only to The Eastmond Group.

34. Upon information and belief, plaintiff Greenfield proposed his services to The Eastmond Group with the intent to

improperly acquire The Eastmond Group for his own purposes, and to become successor in the leadership and ownership of The Eastmond Group.

35. Plaintiff Greenfield's acts and omissions cost defendants/counterclaimants in excess of $2 million in bank interest and fees, attorneys' fees, and costs.

## COUNT 1: FRAUD BY DECEIT

36. Defendants/counterclaimants repeat and reiterate paragraphs 1 through 35 of the counterclaim as if set forth fully herein.

37. Plaintiff Greenfield represented that he would secure financing for the benefit of The Eastmond Group.

38. Plaintiff Greenfield did not secure financing for The Eastmond Group.

39. The Eastmond Group relied on plaintiff Greenfield's representations when they provided plaintiff Greenfield with access to The Eastmond Group's confidential and proprietary information.

40. Plaintiff Greenfield obtained the services of a broker, who in turn introduced The Eastmond Group to Sovereign Bank.

41. Because the Eastmond Group secured financing through Sovereign Bank, The Eastmond Group was obligated to pay

26

loan interest, back taxes, and other fees and costs of approximately $1 million.

42. Upon information and belief, plaintiff Greenfield intended to gain access to The Eastmond Group's confidential and proprietary information for the benefit of plaintiff's outside business and personal interests, including JDC Lighting.

43. Upon information and belief, plaintiff Greenfield used his knowledge of The Eastmond Group's financial condition to make financial recommendations to the companies that would cause The Eastmond Group to collapse, in furtherance of his improper plan to be a successor in and acquire ownership of The Eastmond Group.

44. As a result of plaintiff Greenfield's failure to secure financing through his own efforts as promised, his delay in finding a broker, and lack of involvement in and creation of delays in negotiating various contracts led to fees, costs, and other expenses to The Eastmond Group of approximately $1 million.

## COUNT 2: FRAUD BY OMISSION

45. Defendants/counterclaimants repeat and reiterate paragraphs 1 through 44 as if set forth fully herein.

27

46.   Prior to plaintiff Greenfield's arrival at The Eastmond Group, defendants/counterclaimants were negotiating a forbearance agreement with Citibank.

47.   Plaintiff Greenfield represented to The Eastmond Group that he could secure financing for the Eastmond Group through his professional contacts.

48.   Upon information and belief, plaintiff Greenfield had business relationships with financial institutions, including Sovereign Bank, prior to his arrival at The Eastmond Group.

49.   Plaintiff Greenfield did not disclose his business relationships with financial institutions during the time period that The Eastmond Group was seeking financing.

50.   Upon information and belief, plaintiff Greenfield did not attempt to secure financing through his business contacts at financial institutions, including but not limited to Sovereign Bank.

51.   Plaintiff Greenfield had a duty to disclose to The Eastmond Group his business contacts with financial institutions in connection with the services he agreed to provide to The Eastmond Group.

52.   Defendants/counterclaimants relied on plaintiff Greenfield's representations that he would act in The Eastmond Group's interests in securing financing.

53.   Plaintiff Greenfield's failure to disclose and/or use his contacts with financial institutions caused The Eastmond Group to pay approximately $1 million in broker's fees, interest charges, attorneys' fees, and other costs to secure financing.

## COUNT 3:   COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030(g))

54.   Defendants/counterclaimants repeat and reiterate paragraphs 1 through 53 of the counterclaim as if set forth fully herein.

55.   Plaintiff Greenfield knowingly accessed The Eastmond Group's computer systems.

56.   Plaintiff Greenfield specifically requested and obtained access to The Eastmond Group's accounting information without notice or authorization from Leon Eastmond.

57.   Upon information and belief, plaintiff intended to defraud defendants/counterclaimants by accessing, using, downloading, and forwarding confidential and proprietary information and trade secrets from The Eastmond Group's computer systems to himself and other third parties for personal gain, and without notice or authorization.

58.   Plaintiff Greenfield obtained confidential and proprietary information from The Eastmond Group's computer systems and copied, downloaded and forwarded the same from The

Eastmond Group's computer system to his personal email account, and without notice or authorization.

59.   Upon information and belief, plaintiff Greenfield used and disclosed defendants/counterclaimants' confidential and proprietary information and trade secrets for his own economic advantage.

60.   The Eastmond Group is unable to ascertain the precise amount of damages it has suffered due to plaintiff Greenfield's disclosure of information that was stored on its computer systems.

61.   Upon information and belief, as a result of plaintiff Greenfield's actions, The Eastmond Group has suffered approximately $1 million in damages.

## COUNT 4: MISAPPROPRIATION OF TRADE SECRETS

62.   Defendants/counterclaimants repeat and reiterate paragraphs 1 through 61 of the counterclaim as if set forth fully herein.

63.   Upon information and belief, plaintiff Greenfield used, downloaded, and forwarded confidential and proprietary information and trade secrets obtained from The Eastmond Group's computer systems, and without notice or authorization.

64.    Upon information and belief, plaintiff Greenfield disclosed the confidential and proprietary information and trade secrets to third parties to the detriment of The Eastmond Group.

65.    Upon information and belief, plaintiff Greenfield used defendants/counterclaimants' confidential and proprietary information and trade secrets in breach of his confidential relationship with The Eastmond Group.

66.    Upon information and belief, plaintiff Greenfield purged data from the computer that The Eastmond Group provided to him.

67.    The Eastmond Group is unable to ascertain at this time how plaintiff Greenfield used the information obtained from its computer systems.

68.    Upon information and belief, as a result of plaintiff Greenfield's actions, The Eastmond Group has suffered damages.

## COUNT 5: TORTIOUS INTERFERENCE WITH AN EXISTING CONTRACT

69.    Defendants/counterclaimants repeat and reiterate paragraphs 1 through 68 of the counterclaim as if set forth fully herein.

70.    The Eastmond Group has a contract for financing with Sovereign Bank.

71.  A term and condition of financing in the contract with Sovereign Bank requires that The Eastmond Group remain free from claims and litigation valued in excess of $100,000.

72.  Per the terms of its contract with Sovereign Bank, The Eastmond Group has reported the present litigation.

73.  Plaintiff Greenfield had knowledge of the terms and conditions of the financing contract with Sovereign Bank, including the term referenced in paragraph 71 of the counterclaim.

74.  Upon information and belief, plaintiff Greenfield intentionally filed this lawsuit alleging damages in excess of $100,000 in order to procure a breach of The Eastmond Group's contract with Sovereign Bank.

75.  The Eastmond Group has been damaged by plaintiff Greenfield's filing the present lawsuit.

## COUNT 6: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS

76.  Defendants/counterclaimants repeat and reiterate paragraphs 1 through 75 of the counterclaim as if set forth fully herein.

77.  The Eastmond Group has several business relationships throughout the United States.

32

78. Plaintiff Greenfield reached out to leads from his business dealings with JDC Lighting purportedly to develop new business for The Eastmond Group.

79. Upon information and belief, plaintiff Greenfield's sole purpose was to cause the demise of The Eastmond Group so that he could succeed in ownership of The Eastmond Group.

80. Upon information and belief, plaintiff Greenfield pursued business leads that were initially formed with JDC Lighting in anticipation of his succession in ownership of The Eastmond Group.

81. Upon information and belief, plaintiff Greenfield intentionally abandoned efforts to pursue new business on behalf of The Eastmond Group after the companies secured a conventional commercial loan.

82. Plaintiff Greenfield has caused The Eastmond Group to be served on several occasions at various places of business in connection with this lawsuit.

83. Upon information and belief, plaintiff Greenfield instituted this lawsuit as a means to injure prospective business relationships.

84. As a result of plaintiff Greenfield's actions, The Eastmond Group has been injured in its prospective business relationships.

WHEREFORE, defendants/counterclaimants EASTMOND & SONS BOILER REPAIR & WELDING SERVICES INC., A.L. EASTMOND & SONS INC., and EASCO BOILER CORP. demand judgment in their favor and against plaintiff Timothy B. Greenfield for compensatory damages, consequential damages and punitive damages, together with costs, interest, attorneys' fees, and all other legal and equitable relief to which they are entitled. Additionally, defendants/counterclaimants seek an order compelling plaintiff Greenfield to return all data, documents and information belonging to defendants, enjoining plaintiff Greenfield from further dissemination of The Eastmond Group's confidential and/or proprietary information, providing access to any and all of plaintiff Greenfield's personal computers containing The Eastmond Group's confidential and proprietary information, and providing to defendant/counterclaimants any and all external hard drives containing The Eastmond Group's confidential and proprietary information.

DATED:  August 25, 2008

> Respectfully submitted,
> DAY PITNEY LLP
>
> By: WENDY JOHNSON LARIO (WL 8953)
> P.O. Box 1945
> Florham Park, NJ 07962
> Telephone: (973) 966-6300
> Facsimile: (973) 966-1015
> wlario@daypitney.com
> Attorneys for Defendants

34

## CERTIFICATION

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

BY: WENDY JOHNSON LARIO (WL 8953)
DAY PITNEY LLP
P.O. Box 1945
Florham Park, NJ 07962
Telephone: (973) 966-6300
Facsimile: (973) 966-1015
wlario@daypitney.com
Attorneys for Defendants

DATED: August 25, 2008.

35

CERTIFICATE OF SERVICE

I certify that on this 25th day of August 2008, I caused a copy of the foregoing ANSWER OF DEFENDANTS to be served by electronic means and by overnight delivery upon Denise Campbell, Esquire, of Foley Perlman & Campbell, LLC,  111 John Street, Suite, 1400, New York, NY 10038.

Wendy Johnson Lario

83088808A02082508